**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK SAMSUNG ANDROID WITH IMEI: 353327110526852, THAT IS CURRENTLY LOCATED AT THE ATF FIELD OFFICE EVIDENCE LOCKER LOCATED AT 230 WEST STREET, COLUMBUS, OHIO 43215 | CASE NO. 2:24-mj-330<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Grace M. Bodker, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state the following:

**I. INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device described more fully in Attachment A (the "Android Cellphone")—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The electronic device is: a black, Samsung, Android Phone with IMEI 353327110526852.

2. I am a Special Agent with the ATF and have been so employed since September 2023. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and in the National Firearms Act of 1934. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field

1

Office. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

3. Prior to becoming a Special Agent with ATF, I attended Murray State University, where I graduated with a bachelor's degree in Psychology with a minor in Athletic Coaching. I was previously an intern for the ATF Columbus Field Division, Columbus Group I Field Office in 2022.

4. As a Special Agent, I have participated in many federal and state investigations involving the sale, possession, and trafficking of firearms and controlled substances. Through my participation in these investigations, I have debriefed numerous defendants and witnesses with personal knowledge regarding firearms and/or narcotics trafficking. I have also conducted physical and electronic surveillance, seized evidence and contraband, executed search warrants, and arrested defendants. As a result of my training and experience, I am familiar with federal laws surrounding the illegal possession and sale of both firearms and controlled substances.

5. This affidavit is intended to show that there is sufficient probable cause for the above-described search warrant and does not purport to set forth all my knowledge of, or investigation into, this matter. The facts and information contained in this affidavit are based on my personal knowledge, my training and experience, my interviews of various witnesses, including law-enforcement personnel who participated in this investigation, and my review of certain records and documents.

## II. BACKGROUND ON ILLEGAL FIREARM POSSESSION

6. Federal law generally prohibits individuals who have been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm or ammunition if the individual knows they have been convicted of such an offense and the firearm or ammunition traveled in or affected interstate or foreign commerce prior to the individual's possession of the item(s). *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

7. I know based on my training and experience that individuals who possess firearms and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition. Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearm brochures or owner's manuals, records of sale or acquisition of firearms, firearm magazines, and holsters.

8. I know that individuals who possess firearms and ammunition frequently utilize cell phones to take photographs and videos of themselves in possession of their firearms and ammunition. These same individuals also utilize cell phones, to include calls, texts, and social media applications, to arrange the purchase and sale of firearms, ammunition, and/or firearm-related accessories.

9. I also know from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)).

### III.  IDENTIFICATION OF THE DEVICE TO BE EXAMINED

10. The property to be searched is a black, Samsung, Android Phone with IMEI 353327110526852, which was recovered during the conduction of an interview at Motel 6, located at, 1900 Stringtown Road, Grove City, Ohio 43123, on or about May 23, 2024. The

Android Phone is currently stored in the ATF Field Office Evidence Locker at 230 West Street, Columbus, Ohio 43215 ("ATF Field Office Evidence Locker").

11. The applied for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## V. PROBABLE CAUSE FOR THIS SEARCH

12. As set forth throughout this affidavit, I submit there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) [Felon in possession of a Firearm] has been committed by Ivan IMES, and other individuals both known and unknown. Furthermore, I submit there is probable cause to search the Android phone for evidence of those crimes.

13. On or about May 23, 2024, the ATF received a phone call from a known individual ("L.B."), reporting that Kapri BAXTER allegedly purchased a firearm for Ivan IMES, a convicted felon.

14. IMES was previously convicted of an F1 Attempted Murder (Displayed or brandished firearm) and F2 Felonious Assault (18CR004512) in 2018 and served six years in prison. IMES is currently in custody for violating the terms of his Ohio Adult Parole Authority (APA) on or about April 23, 2024, just 19 days after his release from prison on or about April 4, 2024.

15. On or about May 23, 2024, L.B. notified investigators that he observed a video on Facebook showing IMES in possession of a firearm. He reported Kapri BAXTER had straw purchased the firearm in the video for IMES.

16. On or about May 23, 2024, Investigators queried Kapri BAXTER's name in LeadsOnline, and found that BAXTER had recently pawned two different firearms since IMES release

4

from prison on or about April 4, 2024; a Glock, 9mm pistol, and a GSG, .22 Caliber Fire Fly pistol.

17. On or about May 23, 2024, investigators conducted a voluntary interview with Kapri BAXTER about the firearms she had purchased. Kapri BAXTER reported IMES was in possession of the GSG, Model Fire Fly, .22 Caliber pistol, SN: F514908, when they went to Cambridge, Ohio. Kapri BAXTER also reported that she and IMES pawned the aforementioned GSG .22 Caliber pistol, along with a Glock, Model 43, 9mm pistol, SN: AGWL712. Investigators asked Kapri BAXTER if APA took IMES's phone consequential to his arrest on or about April 23, 2024. She then informed investigators she had his phone and asked if the investigators wanted it. Kapri BAXTER then retrieved the phone from her purse and gave it to investigators on scene.

18. ATF had knowledge that BAXTER and IMES were residing together from the time he was released from prison until his arrest by APA.

19. Consequential to the LeadsOnline query, on or about May 23, 2024, investigators went to Lev's Pawn Shop located at 220 East Main Street Columbus, Ohio, and were given a video from approximately April 27, 2024 of Kapri BAXTER pawning a firearm with IMES.

20. Consequential to the LeadsOnline query, on or about May 23, 2024, investigators recovered the aforementioned Glock, Model 43, 9mm pistol from Ace Pawn Shop located at 4896 West Broad Street Columbus, Ohio.

21. On or about May 28, 2024, Investigators interviewed IMES at Franklin County Corrections Center 2. Before the interview began, IMES was read Miranda Rights and he signed the Constitutional Rights Acknowledgement form. Investigators asked IMES about the video of him shooting a gun on his Facebook. IMES acknowledged that it was posted and admitted to

deleting the post. However, when investigators described a video on his Facebook of him in a red flannel, shooting a gun at an indoor range, IMES explained that video was taken before he was incarcerated in 2018. Investigators informed IMES that they received his girlfriend Kapri BAXTER's phone and IMES's phone from Kapri BAXTER on or about May 23, 2024 when interviewing her. Investigators also informed IMES they planned to conduct search warrants on both phones. IMES responded by stating "go ahead, whatever you got to do on there go ahead." and providing investigators his phone password. Although investigators believe that IMES provided consent by stating for investigators to "go ahead" and search his phone and by voluntarily providing his password, the undersigned is seeking this search warrant as an abundance of caution.

22. The investigators asked IMES if they would find any incriminating evidence on either phones. IMES informed investigators that there were videos on his cellphone of him shooting guns. IMES informed investigators that in these videos, he is shooting Glock pistols that belong to Kapri BAXTER's family. IMES also told investigators, he took images of Kapri BAXTER and himself pointing guns into the mirror at Kapri BAXTER's grandmother's house. IMES informed investigators these images will include the GSG, .22 Caliber pistol that Kapri BAXTER had purchased.

23. Investigators listened to recorded calls made by IMES at Franklin County Ohio Jail that occurred between April 23, 2024 and May 23, 2024. On or about May 23, 2024, IMES made a call to his mother, Tina Imes. During this conversation, IMES tells his mother, "Well, they're gonna find a bunch of stuff inside them phone." IMES is also heard talking to his mother about the amount of time he may serve if he is caught in possession of a firearm.

24. On or about May 23, 2024, IMES makes a call from Franklin County Jail to Kapri BAXTER discussing whether BAXTER would get in any trouble if the police found out she was purchasing guns for IMES. On a call later the same day, BAXTER is heard telling IMES that due to the fact the police are going through both of their phone, the police will find evidence of BAXTER and IMES with the guns.

25. On or about June 6, 2024, Investigators traveled to Lev's Pawn Shop on South High Street in Columbus, Ohio. Employees at Lev's Pawn Shop provided investigators with the ATF Form 4473, and the Receipt to BAXTER's purchase of a Glock, Model 43, 9mm pistol that occurred on May 13, 2024. The employees at Lev's Pawn Shop also provided video footage from May 13, 2024 at the time BAXTER purchased the aforementioned Glock, 43 pistol. The video shows BAXTER enter Lev's Pawn Shop, accompanied by IMES. The two walk into the store together and observe the firearms in the glass firearms case. Then, BAXTER begins filling out an ATF Form 4473. Shortly after, IMES approaches BAXTER, and appears to assist her in completing the ATF Form 4473. BAXTER is then shown purchasing the firearm with cash. Shortly after, BAXTER exits Lev's Pawn Shop with IMES.

26. IMES is prohibited from possessing firearms due to having convictions in Franklin County, for F1 Attempted Murder and F2 Felonious Assault (18CR004512). IMES is currently under the supervision of the Ohio Adult Parole Authority (APA). IMES is currently in custody for violating the terms of his APA supervision.

27. The Device is currently in the lawful possession of the ATF. It came into the ATF's possession through a warrantless seizure in order to retain the device as evidence. Therefore, while the ATF might already have all necessary authority to examine the Device, I seek this

additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

28. The Device is currently in storage at the ATF Evidence Vault in Columbus, Ohio. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

## VI. TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

A. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

B. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

C. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

D. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

E. PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

29. Based on my training, experience, and research, and from consulting publicly available product technical specifications, I know that the Android Cellphone has the capabilities to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training an experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

30. Based on my training and experience, I also know that the Android Cellphone could contain audio and video recordings, ledgers, notes, and other digital information.  I know based on training and experience in previous firearm investigations that individuals involved in the use of firearms will often use cell phones and other electronic communication devices to maintain contact with associates, sources of supply, and customers. Further, felons who have individuals straw purchase for them utilize cell phones to store records, electronic receipts, notes, ledgers, contact information, customer lists, bank statements, physical addresses, e-mail addresses, to retain and transmit photographs, text messages and e-mail messages, to access the internet (to track packages), and to communicate with other individuals concerning the purchasing, transportation, sale, distribution, or possession of controlled substances.  I know that convicted felons, not legally allowed to possess firearms will often take "trophy" pictures of drugs, money, firearms, and other items associated with their illegal activities.  I know that convicted felons, that are not legally allowed to possess firearms, will often communicate via voice telephone calls, text messages, email, and other electronic messaging to one another to facilitate the acquisition of firearms.  I also know that persons involved in transporting firearms often communicate with each other via electronic devices.

### VII.  ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

32. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Android Cellphone because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may

      depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

34. *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VIII. CONCLUSION

35. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Android Cellphone described in Attachment A to seek the items described in Attachment B as evidence of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

*Grace Bodker*
Grace M. Bodker, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

This affidavit was sworn to by the Affiant by telephone after a PDF was transmitted by email, per Fed. R. Crim. P. 3, 4(d), and 4.1 on this **27th** day of June, 2024.



Elizabeth A. Preston Deavers
United States Magistrate Judge

14